UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 11-10240-RGS

GEORGE MILLER, CHAPTER 7 TRUSTEE
FOR THE ESTATE OF ACT ELECTRONICS, INC.

v.

NORMATEC

MEMORANDUM AND ORDER ON PARTIES' CROSS MOTIONS
FOR SUMMARY JUDGMENT

August 27, 2012

STEARNS, D.J.

George Miller, the Chapter 7 Trustee in bankruptcy for Act Electronics, Inc. (ACT), seeks the turnover of property of the ACT estate pursuant to 11 U.S.C. § 542(b) and breach of contract against defendant NormaTec. The dispute arose from NormaTec's failure to pay for medical devices that it ordered from ACT. The case was transferred from the Bankruptcy Court for the District of Delaware on February 14, 2011. After discovery, the parties brought cross-motions for summary judgment on the breach of contract claim. A hearing on the motions was held on August 8, 2012.

BACKGROUND

The material facts, in the light most reciprocally favorable to the respective nonmoving party, are as follows. Under a Manufacturing Agreement entered on

September 1, 2004, ACT agreed to sell, and NormaTec to buy, certain medical products known as pneumatic compression devices (PCD). Reply to Pl.'s L.R. 56.1 Response to Def.'s Statement of Facts (Reply SOF); Agreement, Ex. A (Dkt #30). The Agreement contained the following pertinent terms. All products were to be shipped FOB ACT's "shipping dock and freight collect." Agreement ¶ 1. Payment was to be made "thirty (30) days net from the receipt of invoice"; overdue payments were to "carry a 1.5% per month, 18% per annum interest charge." *Id.* ¶ 2. NormaTec was to provide the equipment described in attachment D to the Agreement to enable ACT to assemble the PCDs according to specification.[1] For its part, ACT warranted

> that its manufacturing will conform to FDA Good Manufacturing Practices and that all products . . . will conform to PCD Standards and will be free of defects in workmanship for a period of one year from the date of first shipment to a NormaTec customer/user. [ACT's] obligation for defects under this warrant will be limited to correction of any such defects; provided the product is being used within the applicable specifications and test parameters.

*Id.* ¶ 13.1. In the event of an alleged defect, the warranty provided that:

---

[1] The amount and type of equipment belonging to NormaTec still in ACT's possession is disputed, but the parties agree that ACT retains at least some. ACT points to a provision in the Agreement that permits it to "retain possession of all Buyer-furnished equipment as long as there are amounts due from Buyer to Manufacturer that are outstanding. On Buyer's request, if and when no such amounts are outstanding, Manufacturer will promptly return to Buyer any and all Buyer-furnished equipment so requested, at Buyer's cost." *Id*. ¶ 6.1.

2

> (a) If [NormaTec] gives [ACT] notice of a defect during the applicable warranty period, [ACT] will, at its option, [1] repair the defective item, [2] replace the defective item or [3] issue a full or partial credit for the defective item.

*Id.* ¶ 13.2. Notice was to be given according to a defined procedure.

> All Notices or other communications in connection with this Agreement ("Notices") will be in writing and delivered personally, sent by facsimile to the intended party's fax number set forth on the signature page to this Agreement, or sent by certified U.S. mail, return receipt requested, and mailed to the intended party's address set forth on the signature page to this Agreement . . . .

*Id.* ¶ 11. Of particular relevance was the stipulation set out in the Agreement that "[ACT] will not have any liability of any kind under this Agreement unless [NormaTec] gives [ACT] written notice within 30 days after the date [NormaTec] knows of its claim." *Id.* ¶ 14.

Finally, the Agreement contained a similar thirty-day notice period in the event either party sought termination.

> 18.1 This Agreement will become effective as of the Effective Date and will continue for a period of twelve (12) months, after which it will automatically renew for successive twelve (12) month additional terms, unless either party provides written notice of termination to the other at least ninety (90) days in advance of the expiration of the then current 12-month term, or until otherwise terminated pursuant to terms hereof.
>
> 18.2 Either party may, by written notice, terminate this Agreement if the other party materially breaches this Agreement. However, no right of termination for breach will exist until thirty (30) days after the defaulting party is notified in writing of the material breach and has failed to cure or

> give adequate assurances of performance within that thirty (30) day period.
>
> 18.3 All payment obligations and other amounts owed by [NormaTec] to [ACT] will survive any termination or expiration of this Agreement. The provisions of Sections . . . 13.3, 14 . . . will survive any termination or expiration of this Agreement.

*Id.* ¶ 18.

On November 21, 2008, ACT filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code. Miller was appointed the Trustee in bankruptcy. After NormaTec refused to pay for the PCD devices that ACT had delivered prior to September of 2008, Miller brought this lawsuit seeking collection of the $220,764.96 alleged to be outstanding. Pl.'s 56.1 SOF ¶ 10. At issue are three NormaTec purchase orders, two issued in June of 2008 and another originating in April of 2008.[2]

## DISCUSSION

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A 'genuine' issue is one that could be resolved in favor

---

[2] The parties agree on little other than that the June purchase orders superseded the April purchase order, and that the unit cost of the PCD was $680.64. *See* Reply SOF ¶ 7. The parties dispute the number of PCDs actually delivered by ACT to NormaTec, but they agree that it was less than the total number of PCDs ordered. *See id*. ¶ 5-6.

of either party, and a 'material fact' is one that has the potential of affecting the outcome of the case." *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-250 (1986). A party seeking summary judgment bears the initial burden of demonstrating that there is no genuine issue as to a material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). To oppose the motion successfully, the non-moving party "may not rest upon the mere allegations or denials of his pleading. . . ." *Anderson*, 477 U.S. at 256. Rather, the non-movant must submit "'sufficient evidence supporting the claimed factual dispute' to require a choice between 'the parties' differing versions of the truth at trial.'" *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 841 (1st Cir.1993), quoting *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir. 1975). On cross-motions for summary judgment, "the court must consider each motion separately, drawing inferences against each movant in turn." *Reich v. John Alden Life Ins. Co.*, 126 F.3d 1, 6 (1st Cir. 1997).

***Breach of Contract*[3]**

---

[3] It is not clear from the record whether the contract is one solely for the sale of goods, or whether the "predominant factor, thrust, or purpose" of the contract is the rendition of services, and thus not within the scope of the Uniform Commercial Code (UCC). *White v. Peabody Constr. Co.*, 386 Mass. 121, 132 (1982). Although both parties cite to the UCC in their briefs, it appears that ACT's obligations included the provision of services, namely the assembly of the PCDs. Regardless of whether the UCC or common law governs, a written contract exists, and thus, its terms control. *See* Mass. Gen. Laws ch. 106, § 1-102(3) ("The effect of provisions of this chapter may be

5

To establish a breach of contract, a plaintiff has the burden of proving the failure of the defaulting party to conform to one or more of the contract's material terms. A term is material when it involves "an essential and inducing feature" of the contract. *Buchholz v. Green Bros. Co.*, 272 Mass. 49, 52 (1930). *See also Lease-It, Inc. v. Mass. Port Auth.*, 33 Mass. App. Ct. 391, 396 (1992). "[A] material breach by one party excuses the other party from further performance under the contract," *id.* at 397, and "[o]nce relieved from performance, the injured party is not liable for further damages incurred by the party in material breach." *Id.* (citations omitted).

> Though questions of materiality are usually to be determined by the trier of fact, . . . the rule is not universal. As is true of virtually any factual question, if the materiality question admits of only one reasonable answer (because the evidence on the point is either undisputed or sufficiently lopsided), then the court must intervene and address what is ordinarily a factual question as a question of law.

*Gibson v. City of Cranston*, 37 F.3d 731, 736 (1st Cir. 1994).[4]

The Trustee alleges that NormaTec failed to pay for PCDs delivered by ACT (and

---

varied by agreement, except as otherwise provided in this chapter and except that the obligations of good faith, diligence, reasonableness and care prescribed by this chapter may not be disclaimed by agreement but the parties may by agreement determine the standards by which the performance of such obligations is to be measured if such standards are not manifestly unreasonable.").

[4] If applicable, the UCC, like the common law, stipulates that the tender of the goods by the seller "entitles the seller to acceptance of the goods and to payment according to the contract." Mass. Gen. Laws ch. 106 § 2-507(1).

6

accepted) prior to September of 2008, and that neither ACT's subsequent bankruptcy petition nor ACT's failure to fulfill the balance of any outstanding purchase orders excuses NormaTec's failure to pay. With regard to NormaTec's reliance on a breach of warranty by ACT, the Trustee notes that NormaTec never provided ACT with the thirty-day notice of a product defect required by the warranty. *See* Agreement ¶ 14. NormaTec, for its part, does not dispute the fact that it did not pay for a significant number of the delivered devices. Rather, NormaTec maintains that it did give ACT sufficient notice of the defective product claim and, as a result, was excused from making further payments.

As a factual matter, NormaTec alleges that after it was contacted by the Trustee about the overdue payments, its counsel emailed the Trustee on December 4, 2008, complaining that the PCD devices failed to conform to the warranty. ACT responds that the email is not part of the summary judgment record as it (1) is not authenticated, (2) was produced after the close of discovery, and (3) cannot be found among the Trustee's (or ACT's) files. All of this is somewhat beside the point.[5] Even were the court to assume that the email is authentic (it does not), it would not amount to a proper written

---

[5] The Trustee submits a sworn affidavit averring that he never received the email, nor could it be found in a forensic search of his and ACT's computer databases (illustrating the wisdom of the Agreement's stipulation that notices were to be given in writing). *See* Dkt # 45.

7

notice under the terms of the Agreement. *See Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 991-992 (1st Cir. 1988) ("This court has repeatedly declined invitations to alter the provisions of commercial compacts negotiated at arm's length. . . . These truths are particularly self-evident in a case like this one, where none of the parties were babes in the wood, the mechanics of the dual notice provision and the indicated time parameters appear to have been reasonable, and the requisite form of claim was not an unduly complicated one."). At most the email would show that as of December 4, 2008, NormaTec knew that it had a potential warranty claim against ACT. Yet, no written notice of the claim in the form required by the Agreement was forthcoming to the Trustee within thirty days after the email was allegedly sent.[6]

In the alternative, NormaTec argues that ACT's failure to deliver the remaining balance of the devices materially impaired the contract as a whole and excused it from further performance (that is, payment for the goods received), citing Mass. Gen. Laws ch. 106 § 2-612(2)-(3). Even assuming the UCC governs, it gives NormaTec no relief. *See id.* ("(2) The buyer may reject any installment which is non-conforming if the non-conformity substantially impairs the value of that installment *and cannot be cured*

---

[6] At the hearing, NormaTec's counsel argued that a written notice that the goods were defective would have been futile because of ACT's bankruptcy. The court is unaware of any provision of the Bankruptcy Code that excuses a debtor of a bankrupt estate from complying with its contractual obligations without the express permission of the Bankruptcy Court or the Trustee.

8

or if the non-conformity is a defect in the required documents; but if the non-conformity does not fall within subsection (3) and the seller gives adequate assurance of its cure the buyer must accept that installment. (3) . . . [T]he aggrieved party reinstates the contract *if he accepts a non-conforming installment without seasonably notifying of cancellation* or if he brings an action with respect only to past installments or demands performance as to future installments.") (emphasis added).

More fundamentally, the UCC does not alter the explicit terms of the contract. If NormaTec believed that the failure to deliver the entire lot of PCDs was a material breach of the Agreement, it was required to give ACT written notice and an opportunity to cure the breach, neither of which it did. *See* Agreement ¶ 18.2.[7]

In what can only be characterized as an inspired flight of fantasy, NormaTec argues that it had no duty under the contract to notify ACT of its "affirmative defenses" in future litigation, and because its claim here is in the nature of a "recoupment," it is not a true "claim" under the contract (for which notice was required), but rather an inchoate affirmative defense (for which no timely notice was due). The argument is

---

[7] In its motion, NormaTec states that "[a]s soon as it became clear to NormaTec that it would not be receiving the PCDs from ACT, it took actions consistent with [Mass Gen. Laws ch] 106 § 2-711, cancelled that contract and covered by obtaining the devices from another seller." Def.'s Mot. at 7. There is nothing in the record, however, that indicates that NormaTec cancelled the contract pursuant to the square corners of the Agreement as it was obligated to do.

9

groundless. *See* Wright & Miller, Fed. Practice & Procedure, § 1401 (3d ed. 2012) ("Recoupment is the right of defendant to have plaintiff's monetary claim reduced by reason of some claim defendant has against plaintiff arising out of the very contract giving rise to plaintiff's claim."). NormaTec's reliance on *United Structures of Am., Inc. v. G.R.G. Eng'g, S.E.*, 9 F.3d 996 (1st Cir. 1993), as support for its position is puzzling as that case is inapplicable on its face.[8] It is true that recoupment "is 'in the nature of a defense' and is intended to 'permit . . . judgment to be rendered that does justice in view of the one transaction as a whole.'" *Id.* at 999. However, in a civil action, like this one, "the counterclaim performs the function of recoupment" – here, NormaTec forfeited the opportunity to assert a counterclaim by failing to comply with the notice provision of the Agreement. *See Kelly v. Deutsche Bank Nat'l Trust Co.*, 789 F. Supp. 2d 262, 266 n.7 (D. Mass. 2011).[9] A party cannot remain silent about allegedly defective goods in contradiction to the terms of a written agreement, and then

---

[8] In *United Structures*, the Court posited whether the Miller Act permits recoupment where a defendant-general contractor was not in privity with a plaintiff-supplier (it does). No notice provision was at issue in *United Structures*, as the parties were not in privity with one another.

[9] "The doctrine of recoupment, however, remains viable in bankruptcy law, where all actions are equitable in nature." *Id. See also In re Grand Wireless, Inc.*, 2007 WL 1557461, *2 (D. Mass. May 29, 2007) ("Even though an equitable doctrine, recoupment is construed narrowly in keeping with the general policy not to prefer one creditor over another in bankruptcy.").

10

belatedly attempt to avoid its payment obligation by restyling its legal claim as an equitable defense.[10] *See* Agreement ¶ 13.2.

## ORDER

For the foregoing reasons, the Trustee's motion for summary judgment is ALLOWED. NormaTec's motion for summary judgment is DENIED. The Trustee will submit to the court, within fourteen (14) days of the date of this Order, a statement of the damages he seeks (based on the number of devices that he can prove were delivered). The parties will also jointly provide, within fourteen (14) days of this Order, a list of any equipment that belongs to NormaTec that remains in ACT's possession. Within twenty-eight (28) days of the date of this Order, the parties will submit a joint proposal for a mechanism to determine the sum due and owing to ACT's estate.

SO ORDERED.

---

[10] The court recognizes that there is no dispute that ACT failed to fill the entire purchase order and that NormaTec is obligated to pay only for those goods that it received. *Cf. Celi v. Trustees of Pipefitters Local 537 Pension Plan*, 2011 WL 5926669, *6 (D. Mass. Nov. 28, 2011) ("[T]he First Circuit has recognized a creditor's right to recoup pre-bankruptcy petition overpayments from post-petition obligations to a debtor. In this Circuit, recovery of overpayments constitute transactions in the 'nature of recoupment,' unaffected by bankruptcy proceedings, if the debt owed to the creditor arises out of the 'same transaction' as the debt the creditor owes the debtor.") (citations omitted). *See also In re Holyoke Nursing Home, Inc.*, 372 F.3d 1, 5 (1st Cir. 2004) (finding it inequitable to permit nursing home to "retain the windfall" of overpayments Medicare made to the nursing home).

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE